# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **FOR THE USE AND BENEFIT OF** | ) | |
| **POWER SERVICES INCORPORATED** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civ. Action No.: 1:07-CV-00304** |
| | ) | |
| **HANOVER INSURANCE COMPANY** | ) | |
| **Defendant.** | ) | |

---

## POWER SERVICES INCORPORATED'S OPPOSITION TO MILITARY PERSONNEL SERVICES CORPORATION'S MOTION TO INTERVENE

Plaintiff, United States of America for the use and benefit of Power Services Incorporated ("PSI"), by and through its undersigned counsel, hereby submits is Opposition to Military Personnel Services Corporation's ("MPSC") Motion to Intervene (the "Motion"), and states as follows:

## INTRODUCTION

MPSC's Motion presently before this Court is both fundamentally flawed as to its legal analysis and misleading as to its factual assertions. MPSC asserts in its Motion the erroneous contention that it, as principal on the payment bond issued by Hanover Insurance Group, Inc. ("Hanover") that is the subject of this action, may intervene in this action as a matter of right. However, in pursuing this Motion, MPSC has misled the Court by wrongly asserting that MPSC's rights are not adequately protected in this action due to certain alleged "personal defenses" that only MPSC may assert as a defense. Moreover, MPSC misapplies or ignores an abundance of caselaw establishing that it has no right to intervene in this action.

In addition, MPSC proposes to file a Complaint in Intervention, Complaint in Interpleader and Third-Party Complaint ("MPSC Complaint") that includes claims against its first tier subcontractor Highland Renovations Corporation ("Highland"), whom MPSC terminated from the Old Post Office Pavilion Project at 1100 Pennsylvania Avenue, N.W., 8th Floor, Washington, DC (the "Project") and an interpleader action that involves Highland and several of Highland's unpaid second tier subcontractors other than PSI, claiming these parties had adverse claims against one another under Highland's Miller Act payment bond (the "bond"). As is apparent from the recitation of the parties at issue in MPSC's papers, MPSC's Complaint can only confuse and complicate the present litigation and transform this simple payment bond action into a complex, multi-party litigation of MPSC's claims and defenses against first tier subcontractor Highland, most or all of which may have nothing whatsoever to do with PSI's claims against Hanover.  These sorts of machinations are not what FRCP 24 is designed to permit, and MPSC's Motion to Intervene should be denied accordingly.

### FACTS RELEVANT TO THE DISPOSITION OF THIS MOTION

1.      This action concerns a simple Miller Act claim, brought pursuant to 40 U.S.C. § 3133(2) by second tier subcontractor PSI against Hanover, the surety that issued MPSC' payment bond.  The bond is attached hereto as **EXHIBIT 1**.

2.      The payment bond protects persons or entities "furnishing labor, material or both in the prosecution of the work…and any modifications of the contract that subsequently are made.  Notice of those modifications to the Surety(ies) are waived."  As a result of this language the penal sum of the bond, which was initially stated as $401,452.00 is automatically enlarged to include increases in costs to the contract.  **EXHIBIT 1**.

3.      PSI is a second tier subcontractor hired by Highland, a first tier subcontractor. MPSC therefore does not have privity of contract with PSI.  (MPSC Complaint ¶ 36.)

4.      Despite assertion of an affirmative defense in the nature of fraud, MPSC does not allege any specific facts regarding any sort of fraud committed by PSI.  (MPSC Complaint, ¶ 44.)

5.      MPSC proposes to add four additional parties to this action: (1) its first tier subcontractor Highland, (2) OMF Contractors, Inc. ("OMF"), (3) Simplex Grinnell ("Grinnell"), and (4) PDK.& Associates ("PDK").  (MPSC Complaint, ¶ 17.)

6.      MPSC avers that Highland has submitted a claim of $650,000 against its payment bond.

7.      MPSC affirmatively alleges that Highland failed to pay some and/or all of its subcontractors on the Project.  (MPSC Complaint, ¶¶ 63-66, 77-78, 81-83.)

8.      MPSC further alleges it has or may become obligated to pay Commercial Carpets of America ("CCA"), another second tier subcontractor under Highland, for work it performed on the Project.  In so doing, MPSC tacitly acknowledges that it may has or may become obligated to pay Highland's second tier subcontractors for work performed or materials provided to the Project under the terms of its payment bond.  (MPSC Complaint, ¶ 65.)

9.      MPSC acknowledges that it may seek to add additional parties to this litigation if additional claims are made under the payment bond by other second tier subcontractors and/or suppliers retained by Highland on the Project.  (MPSC Complaint ¶ 4.)

10.     Upon information and belief, MPSC does not have privity of contact with OMF, Grinnell, PDK, CCA or any other second tier subcontractors under Highland that it may seek to include as parties in this action.

11.     The claims of PSI, OMF, Grinnell, PDK and CCA total $332,263.31.  (MPSC Complaint, ¶¶ 2, 19 and 65.)[1]

12.     Any payments Hanover is required to make to PSI, OMF, Grinnell, PDK and/or CCA for work performed or materials provided to the Project are necessarily monies that should have been paid by Highland to these entities.  As a result Hanover and/or MPSC may utilize these sums either as setoffs to any claim by Highland or as additional damages in any independent action against Highland.

13.     To date, only PSI has initiated an action against the payment bond.

## ARGUMENT

MPSC is only entitled to intervention as a matter of right if it can "show that its motion is timely, that it has an interest in the subject property, that its interest will be impaired if the proceeding progresses without the applicant, and that it is now inadequately represented."  Burka v. Aetna Life Ins. Co., 917 F.Supp. 8, 12 (D.D.C. 1996).  While MPSC does not appear to be untimely in filing its Motion, MPSC fails to show that it has an interest to be protected in this litigation, that its purported interests will be impaired if the present proceeding goes forward without MPSC as a party or that MPSC's purported interests are inadequately represented.

### A.     MPSI has not shown that it has an interest in the present litigation.

The interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.  Nuesse v. Camp, 385 F.2d 694, 700 (D.C. Cir. 1967).  In this instance, MPSC fails to show that it has

---

[1] This number is arrived at as follows:

|          |            |
| -------- | ---------- |
| PSI Claim | $151,958.31 |
| OMF      | 39,425.00  |
| Simplex  | 15,578.25  |
| PDK      | 47,801.75  |
| CCA      | 77,500.00  |
| **TOTAL** | **$332,263.31** |

present interest in the litigation.  In addition, MPSC proposes to alter this litigation in a manner that is incompatible with the efficient resolution of PSI's Miller Act claim.

1.    <u>MPSC has not shown it has present, protectable interest in this litigation.</u>

MPSC states that it has a substantial interest in the present litigation because it entered into an indemnity agreement with Hanover that obligates MPSC to hold Hanover harmless from any loss, cost or expense connected with an action on the bond.  (Motion at ¶ 4(a.).)  However, by its very nature, such an indemnity agreement is a contingent, rather than present, interest tht is insufficient as a matter of law to justify intervention.

This court has held that a contingent liability by an insurance agreement does not create the sort of "'significantly protectable interest' required for intervention as of right." <u>Independent Petrochemical Corp. v. Aetna Casualty and Surety Co.</u>, 105 F.R.D. 106, 110-111 (D.D.C. 1985). In that case, as here, the interests of the movants for intervention were purely hypothetical until a judgment was secured by another party.  Similarly, MPSC's interests in this action remain hypothetical and contingent until such time as PSI obtains a judgment on its claims. Accordingly, intervention is inappropriate.

Moreover, nowhere does MPSC demonstrate that Highland or any of the other second tier subcontractor claims remain valid under the terms of Hanover's payment bond.  Specifically, each claim must meet the requirements of the bond limitations period set forth in the Miller Act, namely that such claims be asserted in the form of a Complaint filed no more than one year after the claimant's last work on the Project.  40 U.S.C. § 3133(4).  In addition, second-tier subcontractors must supply written notice of their claims in accordance with the requirements of the Miller Act.  40 U.S.C. § 31233(2).  Neither MPSC's Motion nor the MPSC Complaint address these dispositive issues relating to the viability of the claims it asserts as a basis for its

Motion.  Indeed, no one other than PSI has filed a Complaint against Hanover's payment bond.

Accordingly, MPSC has to established any viable interest to be protected under Rule 24(a).

> 2.    MPSC proposes to radically reorient this litigation in a manner that makes it impossible for PSI to efficiently resolve its Miller Act claim.

An examination of MPSC's Complaint shows that allowing intervention would be incompatible with the efficient resolution of PSI's claim.  See  Nuesse, 385 F.2d at 700.  See also Union Switch & Signal, Inc. v. St. Paul Fire and Marine Ins. Co. 226 F.R.D. 485, 491 (S.D.N.Y. 2005) (Court concluded that intervention should not be allowed when it would exponentially expand the complexity of the litigation without achieving any measurable enhancement of the parties' rights).   PSI's claim rests solely on its allegations that it performed work on the Project and was not paid in full within 90 days from the completion of its work.  See United States ex rel. Tennessee Valley Marble Co. v. Grunley Constr. Co. 433 F.Supp.2d 104, 114 ("To state a valid Miller Act claim, a plaintiff must prove essentially two elements: (1) it has 'furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131'; and (2) it 'has not been paid in full within 90 days'").   However, MPSC proposes to transform the present action into a global litigation of its claim and defenses concerning Highland and Highland's subcontractors other than PSI, fundamentally altering the scope and nature of the litigation, exponentially expanding the complexity of the action. Moreover, MPSC cannot demonstrate any enhancement of PSI's or Hanover's rights in this litigation.  Indeed such a result can only thwart PSI's ability to have its claim resolved in an efficient manner.  An overview of the Third-Party and Interpleader claims MPSC seeks to bring into this action further illustrates this point.

a.    MPSC's Third-Party claim against Highland is distinct from PSI's claim and the claims of each of Highland's other second tier subcontractors and/or suppliers.

The MPSC Complaint includes a Third-Party Complaint against Highland.  (Complaint at pp. 11-17.)  MPSC entered into a direct subcontract with Highland, creating privity of contract between these two parties.  MPSC's Third-Party Complaint alleges that Highland breached the parties contract, was unjustly enriched and committed fraud against MPSC.  Id.

However MPSC's dispute with Highland is a completely different category of claim than the claims of PSI and Highland's other second tier subcontractors.  MPSC appears to support PSI's payment bond claim by alleging that Highland breached its contract with MPSC by, among other things, failing to pay some and/or all of its subcontractors on the Project.  (MPSC Complaint, ¶¶ 63-66, 77-78, 81-83.)  MPSC also alleges that Highland failed to perform its work in conformance with the parties' subcontract, failed to pay workers appropriate sums under the Davis-Bacon Act, and failed to submit change orders in accordance with the subcontract's terms and conditions.  (MPSC Complaint, pp. 11-17.)  Of course, it is beyond dispute that none of these allegations, even if true, provide any defense to PSI's claim for unpaid work against the payment bond issued by Hanover.

MPSC also asserts fraud allegations that it contends may create "personal" claims or defenses that MPSC can use against Highland.  Coleman Capital Corp. v. Fidelity & Deposit Co. of Md., 43 F.R.D. 407 (S.D.N.Y. 1967).  But see RESTATEMENT (THIRD) SURETYSHIP AND GUARANTY §34(1).[2]  Nevertheless, these defenses, too, have no relevance to PSI's claim because

---

[2] RESTATEMENT (THIRD) SURETYSHIP AND GUARANTY §34(1) provides that a surety raise any defense to its secondary obligation that the principal may have to the underlying obligation except:

    (a)  discharge of the underlying obligation in bankruptcy proceedings;

    (b)  Unenforceability of the underlying obligation due to the principal obligor's lack of capacity.

Notably, this provision does not include fraud as one of the "personal" defenses reserved for the principal but unavailable to the surety.

PSI is not alleged to have had any role in Highland's alleged fraud.    None of the fraud allegations implicate PSI or any of Highland's other second tier subcontractors, rendering them irrelevant to this action.

> b.    MPSC's Interpleader claims against the second tier subcontractor's claim are distinct from Highland's claim; and each second tier subcontractor's claim is distinct from the claims of the others.

The MPSC Complaint also includes an Interpleader Complaint that includes Highland, PSI, OMF, Grinnell and PDK.  (Complaint at pp. 4-7.)  MPSC alleges that these five parties have adverse claims to the same property, the Hanover payment bond, and that if these claimants are not made parties to MPSC's Interpleader Complaint there is a high likelihood of multiple, inconsistent judgments. (Complaint at ¶¶ 20-21.)   However, as will be shown below, each of these claims is distinct from the others and there is no possibility of multiple, inconsistent judgment.[3]

Each second tier subcontractor's claim identified by MPSC is distinct from Highland's claim, due to the fact that none of these entities have privity of contract with MPSC and that each of these claims arises from Highland's failure to pay its subcontractors or suppliers for work or materials they provided under their respective agreements with Highland on the Project.  As a result, the claims of these second tier entities, including PSI, are in some sense subsumed within the dispute between Highland and MPSC.  More importantly, however, any amount collected by a second tier claimant creates either an affirmative claim or right to recoupment by MPSC or Hanover against Highland.   Thus, neither the surety nor MPSC is subject to inconsistent judgments even if all the second tier subcontractors are successful in pursuing their claims.

---

[3] It should also be noted that these claims are not properly subject to an interpleader claim.  This is discussed independently in Section D herein.

Moreover, the total amount PSI may recover on its claims is not limited by the amounts Highland may recover from MPSC. This owes to the fact that PSI's claims arise from an independent agreement between it and Highland, and PSI is entitled to recover all sums due in accordance with its agreement with Highland. See United States ex rel. Tennessee Valley Marble Holding Co. v. Grunley Constr., 443 F.Supp.2d 104, 116 (D.D.C. 2006). To resolve all of the claims presented by all of the second tier subcontractors therefore would require an evaluation of what each second tier entity may recover under its agreements with Highland, which would exponentially expand the complexity of this litigation without achieving any measurable enhancement of the rights possessed by PSI or Hanover.

**B.    MPSC has not shown that its interests will be impaired if this action goes forward as currently situated.**

Even if the Court finds that MPSC has sufficient interest to merit consideration for intervention, MPSC has not shown that its interests will be impaired if this case goes forward without it as a party. MPSC's contends that it has several defenses and claims to this lawsuit which Hanover cannot raise and "[s]hould MPSC not be allowed to intervene, these 'personal' defenses and claims would be barred in future litigation pursuant to the doctrines of *res judicata*, collateral estoppel and/or *stare decisis*" citing Coleman Capital Corp. v. Fidelity & Deposit Co. of Md., 43 F.R.D. 407 (S.D.N.Y. 1967). (Motion at ¶ 4(b.).) MPSC's reliance on Coleman Capital Corp. is flawed, and MPSC fails to show that its purported interest may be impaired if this action goes forward as currently situated.

As subsequent cases in the Southern District of New York point out, Coleman Capital Corp. is a decision that is limited to its facts. Union Switch & Signal, Inc., 226 F.R.D. at 490. In Coleman Capital Corp., the general contractor alleged that the plaintiff had fraudulently induced

it to enter into the indemnity agreement with the surety, which was a "personal" defense the surety could not raise. Coleman Capital Corp., 43 F.R.D. at 408.

However, the "personal" defenses and claims that sureties are unable to assert on behalf of their principals are only those that are unrelated to the validity of the underlying obligation on which the creditor's suit was based. Union Switch & Signal, Inc., 226 F.R.D. at 490. Union Switch & Signal, Inc. involved a sub-subcontractor, similar to PSI, suing on a prime contractor's bond. Neither the principal nor the surety proposed any independent counterclaims against the sub-subcontractor or any defenses truly unrelated to their obligations under the payment bond. Id. The court pointed out that "the 'personal' defenses and claims that sureties are unable to assert on behalf of their principals are those that are unrelated to the validity of the underlying obligation on which the creditor's suit was based, and that furthermore, a creditor plaintiff may not be compelled to join a principal in a suit against a surety so that the principal may assert those independent claims and defenses against the plaintiff directly." Id. (emphasis added). Here, the alleged "personal" defense asserted by MPSC, in this case fraud, is entirely related to the underlying obligation on the bond since it involves Highland's alleged false representation that it would, for example, pay its subcontractors and suppliers. However, even if we look beyond the Union Switch & Signal Inc. court's prohibition against joining MPSC in the this action, MPSC is still unable to show that has any "personal" defenses vis-à-vis PSI that may be impaired.

1.    MPSC fails to state a valid claim of fraud against PSI.

If MPSC had a valid claim or defense against PSI for fraud it would need to properly plead it. However, MPSC makes no more than a bare allegation that "Power Services' claims are or may be barred by fraud" without providing any factual detail to support that proposition.

(Complaint at ¶ 44.)  This bare allegation of fraud is insufficient as a matter of law for pleading fraud as a "personal" defense against PSI.

In order to prevail on a claim of fraud a party must establish (1) a false representation (2) in reference to a material fact (3) made with knowledge of its falsity (4) with an intent to deceive and (5) on which action is taken in reliance upon the false representation. Barnstead Broadcasting Corp. v. Offshore Broadcasting Corp., 886 F.Supp. 874, 883 (D.D.C. 1995), U.S. for Use and Benefit of DMI Inc. v. Darwin Constr. Co. 750 F.Supp 536, 541 (D.D.C. 1990.  Rule 9(b), Fed.R.Civ.P., requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be pleaded with particularity."  See Barnstead Broadcasting Corp. v. Offshore Broadcasting Corp., 886 F.Supp. 874, 883 (D.D.C. 1995).

The MPSC Complaint contains no allegations against PSI regarding any one of the five elements needed to prevail on a claim of fraud.  There are no allegations PSI has engaged in any fraudulent acts that would give MPSC an independent cause of action against PSI or that may be utilized as a "personal" defense to PSI's payment bond claim.[4]  Moreover, RESTATEMENT (THIRD) SURETYSHIP AND GUARANTY §34(1) does not include fraud as a "personal" defense that a surety is precluded from utilizing to defend a bond claim.[5]

2.     Hanover is fully able to present any defenses that MPSC may present.

MPSC also argues that Hanover may not assert defenses such as payment, ripeness, failure to mitigate, negligence, illegality and fraud because as a "surety on the subject bond and not a party to the subject contract relating to the Project, it is unable to present these defenses and

---

[4] The MPSC Complaint does not establish any factual basis for a claim of fraud against PSI.  Nor does the MPSC Complaint provide any indication that MPSC knows of any factual basis for alleging that PSI committed any sort of fraud against it.  Under the circumstances it is completely inappropriate for MPSC to claim that it may utilize fraud as a "personal" defense to PSI's claim.

[5] As discussed in Footnote 2, RESTATEMENT (THIRD) SURETYSHIP AND GUARANTY §34(1) does not include fraud as one of the "personal" defenses reserved for the principal but unavailable to the surety.  As a result, it is doubtful that Hanover would be precluded form raising fraud as a defense against PSI's claim even if the factual basis such a claim existed.

claims due to, among other things, lack of privity." (Motion at ¶ 4(d.).) This statement is simply wrong.

In truth, neither MPSC nor Hanover is in privity of contract with PSI. However, Hanover's lack of privity is no more an impediment to it in defending this action than MPSC's lack of privity. It is well-settled that a surety is entitled to all of its principals defenses under the contract. RESTATEMENT (THIRD) SURETYSHIP AND GUARANTY §34(1). See also National Union Fire Ins. Co. of Pittsburgh, PA v. Alexander, 728 F.Supp. 192, 198 (S.D.N.Y. 1989); Rhode Island Hospital trust Nat'l Bank v. the Ohio Casualty Ins. Co., 789 F.2d 74, 78-79 (1st Cir. 1986); Asociacion de Azuracerod de Guatemala v. United States Nat'l Bank of Oregon, 423 F.2d 638, 641 (9th Cir 1970).

Among the defenses this court has recognized is the general contractor's right to recoupment for defective work or materials provided by a subcontractor or supplier that does not have privity with the general contractor in a Miller Act payment bond claim. Grunley Constr., 443 F.Supp.2d at 116. Moreover, under Grunley Constr. a second tier subcontractor suing on a prime contractor's Miller Act bond may not claim entitlement to more than would be due and owing under its agreement with its first tier subcontractor. Id. Consequently, even though Hanover does not have contractual privity with PSI, Hanover may avail itself of all of MPSC's and Highland's defenses to PSI's claim.

Therefore, there is simply no basis for stating that MPSC's interests are impaired by denying its Motion to Intervene. MPSC has not alleged any legitimate "personal" defenses vis-à-vis PSI. Nor has MPSC made a legitimate argument that Hanover has less ability to protect MPSC's interests.

### C.    MPSC has not shown that their interests are not adequately represented.

Even if we assume, *arguendo*, that MPSC meets the interest requirement and that MPSC's interests may be impaired if it is not allowed to intervene in the present litigation, MPSC is adequately represented in this litigation.    MPSC argues that its interests are not adequately represented because the surety is unable to present all of the defenses MPSC has available to it "due to, among other things, lack of privity" and that "intervention is necessary because Defendant cannot adequately represent MPSC's interest."  (Motion at ¶ 4(c.).)

As discussed in the previous section, MPSC's lack of privity argument is a non-issue. Hanover may avail itself of all of MPSC's and Highland's defenses against PSI's claims, and PSI may not collect more against Hanover's bond than it is due under its agreement with Highland. Grunley Constr., 443 F.Supp.2d at 116.  Moreover, as explained above, MPSC does not possess any "personal" defenses that are unavailable to Hanover.    See RESTATEMENT (THIRD) SURETYSHIP AND GUARANTY §34(1); Union Switch & Signal, Inc., 226 F.R.D. at 490.

Further, upon examining MPSC's and Hanover's objectives vis-à-vis PSI's claim, it is obvious that both surety and principal have the same objective: to avoid paying PSI.  Federal courts have consistently ruled when the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion or malfeasance. Bragg v. Robertson, 183 F.R.D. 494, 496 (S.D.W.V. 1998).  See Virginia v. Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th Cir. 1976) (same); Doe v. Duncanville Independent School Dist., 994 F.2d 160, 168 (5th Cir. 1993) (same); Bottoms v. Dresser Industries, Inc., 797 F.2d 869, 872-73 (10th Cir. 1986) (same); Moosehead Sanitary District v. S.G. Phillips Corp., 610 F.2d 49, 54 (1st Cir. 1979) (same); Shea v. Angulo, 19 F.3d 343, 347 (7th Cir. 1994) (where prospective

intervenor has the same goal as the party to a suit, presumption is that representation is adequate unless the proposed intervenor demonstrates, at the very least, some conflict exists).  See also Burka v. Aetna Life Ins. Co., 917 F.Supp. 8, 12 (D.D.C. 1996) (plaintiffs had the same rights as the proposed intervenors and were actively fighting to protect those rights; therefore the proposed intervenors were not necessary parties for the full, fair and efficient resolution of the matters under consideration).

MPSC does not argue that it and Hanover have any adversity of interest or that Hanover and PSI are engaged in any sort of collusion or malfeasance.  Moreover, there is no incentive for Hanover to engage in any bad faith conduct in defending PSI's claim, as such conduct would presumably compromise its indemnity rights.[6]  This complete absence of any reason to believe that Hanover's representation will not be adequate further illustrates that MPSC's Motion to Intervene as a matter of right under Rule 24(a) should be denied.

Finally, it is common practice in situations such as the one in which MPSC finds itself for the bond principal, in this case MPSC, to request that the surety "tender" the defense of the action to it for purposes of satisfying any indemnity obligations that may exist between them. Under such a circumstance, the principal ends up essentially in control of the defense of the litigation operating in the name of its surety, thereby achieving what MPSC ostensibly is trying to accomplish via its motion for intervention.  Given this option, the court need not concern itself with MPSC's allegation that its interests are not adequately represented in this litigation, since the means to avoid any concerns in this regard are available to MPSC directly without the need for the court's involvement.

---

[6] Notably, the indemnity agreement between Hanover and MCPS is not included with MCPS' motion.

**D.     MPSC's Interpleader claim is procedural improper and would unnecessarily expand this litigation.**

MPSC's seeks to utilize an interpleader action as its means of bring in Highland and its other second tier subcontractors with alleged claims against the payment bond.  As discussed above, adding these parties will increase the complexity of the litigation.  Just as importantly, MPSC's proposed procedural mechanism for adding them is improper.

The District Court's exercise of jurisdiction over a statutory interpleader action requires that: (1) the plaintiff have custody of the disputed property, which must exceed $500 in value; (2) the plaintiff deposit the disputed property into the registry of the court; and (3) two or more adverse claimants of diverse citizenship claim or may claim an interest in the property.  Star Ins. Co. v. Cedar Valley Express, LLC, 273 F.Supp.2d 38, 41 (D.D.C. 2002).  The adversity requirement is met only so long as the stakeholder has a bona fide fear of adverse claims arising with respect to the res.  Id.  However, the requirement is not met where the plaintiff could conceivably be liable to all claimants.  Id. fn3.

In this instance, MPSC has not established any sort of disputed property that may be subject to an interpleader action.  The total combined amount claimed against the bond by Highland's subcontractors is $332,263.31.  (MPSC Complaint, ¶¶ 2, 19 and 65.)  This amount is below penal amount of the bond as alleged by MPSC.  (MPSC Complaint, ¶18.)

Moreover, even if Highland's alleged claim is also considered, the penal sum of the payment bond has not been properly established by MPSC's pleadings.  According to the terms of the bond, the penal sum of the bond automatically increases whenever the contract price increases as a result of change orders with the Government.  **EXHIBIT 1**.  As a result, the bond, as modified by changes to the prime contract, may very well cover the costs of all bond claims, including Highland's.  Further, MPSC has not established that its has authority from or the

consent of Hanover, the defendant in this action, to pay the full penal sum of the bond into court as is required in order to maintain an interpleader action.

There is simply no procedural or practical benefit to allowing MPSC's Interpleader action to move forward. MPSC cannot establish a bona fide fear of adverse claims regarding the bond because it could conceivably be liable to all claimants. The total amount claimed by Highland's second tier subcontractors under the bond to date is $332,263.31, a sum that is less than the amount of the penal sum of the payment bond. Even if all of the subcontractors prevail on their claims, these sums become amounts recoverable or claimable as offsets against Highland, as they would, by definition, be sums that Highland failed to pay its subcontractors and suppliers. Moreover, even Highland's bond claim may be fully covered by increases in the penal sum of the bond due to increases in the contract value via changes in the contract sum. Given these circumstances, Hanover and/or MPSC could conceivably be liable to all of the claimants in the full amount of all claims in the proposed interpleader action, making interpleader inappropriate. Star Ins. Co., 273 F.Supp. at 41 fn3.

MPSC's interpleader action would add unnecessary cost and complexity to this action without conferring any benefits to either PSI or Hanover. Under the circumstances, such an interpleader action is inappropriate.

## CONCLUSION

For the reasons stated herein, Plaintiff Power Services, Inc. respectfully requests this honorable court deny Military Services Personnel Corporation's Motion to Intervene in this matter and disallow Military Personnel Services Corporation's Complaint in Intervention, Complaint in Interpleader and Third-Party Complaint.

Respectfully submitted,

QUAGLIANO & SEEGER, P.C.


/s/ Scott C. Hofer_____
Scott C. Hofer, Esq. (Bar #MD27198)
Quagliano & Seeger, P.C.
21355 Ridgetop Circle, Suite 110
Dulles, Va. 20166
Telephone:     (571) 434-7590
Facsimile:     (571) 434-9006
Email: hofer@quagseeg.com
*Counsel for Plaintiff,*
*Power Services Incorporated*

Of Counsel:

Fred A. Mendicino
Quagliano & Seeger, P.C.
21355 Ridgetop Circle, Suite 110
Dulles, Va. 20166
Telephone:     (571) 434-7590
Facsimile:     (571) 434-9006

## CERTIFICATE OF SERVICE

I hereby certify that, on this 30th day of April, 2007, copies of the foregoing were served electronically, via the Court's Electronic Case Filing system to:

> Dawn C. Stewart
> Stewart & Henry, PLLC
> 1005 Connecticut Avenue, N.W.
> Suite 1000
> Washington, D.C. 20036
>
> Niccolo N. Donzella
> DC Bar No. 424054, Federal Bar No. 09320
> 120 East Baltimore Street
> Suite 2100
> Baltimore, Maryland 21202

/s/ Scott C. Hofer_____
Scott C. Hofer

01/25/2008 16:06  5015900501    PWRSERINC                    PAGE 03
NOV-28-2006  11:41    EXECUTIVE INSURANCE GROUP              703 359 6047   P.03

| **PAYMENT BOND** (See Instructions on reverse) | DATE BOND EXECUTED (Must be same or later than date of contract) 7/25/07 | OMB No.:9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimate to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (MVR), Federal Acquisition Policy Division, GSA, Washington, DC 20405.

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) |
|---|---|
| Military Personnel Services Corp.<br>6059B Arlington Blvd<br>Falls Church VA 22044 | ☐ INDIVIDUAL  ☐ PARTNERSHIP<br>☐ JOINT VENTURE  ☒ CORPORATION<br>STATE OF INCORPORATION<br>Virginia |

| SURETY(IES) (Name(s) and business address(es)) | PENAL SUM OF BOND | | |
|---|---|---|---|
| Hanover Insurance Company<br>PO Box 81042<br>Woburn MA 01813 | MILLION(S) | THOUSAND(S) 401 | HUNDRED(S) 452 | CENTS 00 |

| CONTRACT DATE | CONTRACT NO. |
|---|---|
|  | GS11 P06 ZGC 0166 |

**OBLIGATION:**

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| PRINCIPAL | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | Military Personnel Services Corp. | | | |

| INDIVIDUAL SURETY(IES) | | |
|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
| NAME(S) (Typed) | 1. | 2. |

| | CORPORATE SURETY(IES) | | | |
|---|---|---|---|---|
| SURETY A | NAME & ADDRESS | Hanover Insurance Company<br>PO Box 81042 Woburn MA 01813 | STATE OF INC.<br>New Hamp. | LIABILITY LIMIT $486,000,910 |
| | SIGNATURE(S) | 1. | 2. | Corporate Seal |
| | NAME(S) & TITLE(S) (Typed) | Philip S Goldberg | 2. | |

AUTHORIZED FOR LOCAL REPRODUCTION        attorney in fact

STANDARD FORM 25A (REV. 10-98)
Prescribed by GSA-FAR (48 CFR 53.228(c))

**EXHIBIT**

tabbies

1

NUV-28-2006  11:42    EXECUTIVE INSURANCE GROUP    703 359 6047    P.04

**Certified Copy Void Without Allmerica Financial Watermark**

This Power of Attorney may not be used to execute any bond with an inception date after October 1, 2007

THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA

POWERS OF ATTORNEY
CERTIFIED COPY

KNOW ALL MEN BY THESE PRESENTS: That THE HANOVER INSURANCE COMPANY and MASSACHUSETTS BAY INSURANCE COMPANY, both being corporations organized and existing under the laws of the State of New Hampshire, and CITIZENS INSURANCE COMPANY OF AMERICA, a corporation organized and existing under the laws of the State of Michigan, do hereby constitute and appoint

Philip S. Goldberg, Debra A. Bates and/or Robin L. Dachanto

of Fairfax, VA and each is a true and lawful Attorney(s)-in-fact to sign, execute, seal, acknowledge and deliver for, and on its behalf, and as its act and deed any place within the United States, or, if the following line be filled in, only within the area therein designated

any and all bonds, recognizances, undertakings, contracts of indemnity or other writings obligatory in the nature thereof, as follows:
Any such obligations in the United States, not to exceed Twenty Million and No/100 ($20,000,000) Dollars in any single instance
And said companies hereby ratify and confirm all and whatsoever said Attorney(s)-in-fact may lawfully do in the premises by virtue of these presents.
These appointments are made under and by authority of the following Resolution passed by the Board of Directors of said Companies which resolutions are still in effect:

"RESOLVED, That the President or any Vice President, in conjunction with any Assistant Vice President, be and they are hereby authorized and empowered to appoint Attorneys-in-fact of the Company, in its name and as its acts, to execute and acknowledge for and on its behalf as Surety any and all bonds, recognizances, contracts of indemnity, waivers of citation and all other writings obligatory in the nature thereof, with power to attach thereto the seal of the Company. Any such writings so executed by such Attorneys-in-fact shall be as binding upon the Company as if they had been duly executed and acknowledged by the regularly elected officers of the Company in their own proper persons." (Adopted October 7, 1981 - The Hanover Insurance Company; Adopted April 14, 1982 – Massachusetts Bay Insurance Company; Adopted September 7, 2001 - Citizens Insurance Company of America)

IN WITNESS WHEREOF, THE HANOVER INSURANCE COMPANY, MASSACHUSETTS BAY INSURANCE COMPANY and CITIZENS INSURANCE COMPANY OF AMERICA have caused these presents to be sealed with their respective corporate seals, duly attested by a Vice President and an Assistant Vice President, this 19th day of October, 2004.

  

THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA

Richard M. Van Steenburgh, Vice President

Ronald Rialand, Assistant Vice President

THE COMMONWEALTH OF MASSACHUSETTS)
COUNTY OF WORCESTER    ) ss.

On this 19th day of October, 2004, before me came the above named Vice President and Assistant Vice President of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, to me personally known to be the individuals and officers described herein, and acknowledged that the seals affixed to the preceding instrument are the corporate seals of The Hanover Insurance Company Massachusetts Bay Insurance Company and Citizens Insurance Company of America, respectively, and that the said corporate seals and their signatures as officers were duly affixed and subscribed to said instrument by the authority and direction of said Corporations.



Barbara A. Garlick, Notary Public
My Commission Expires November 28, 2004

I, the undersigned Assistant Vice President of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America, hereby certify that the above and foregoing is a full, true and correct copy of the Original Power of Attorney issued by said Companies, and do hereby further certify that the said Powers of Attorney are still in force and effect.

This Certificate may be signed by facsimile under and by authority of the following resolution of the Board of Directors of The Hanover Insurance Company, Massachusetts Bay Insurance Company and Citizens Insurance Company of America.

"RESOLVED, That any and all Powers of Attorney and Certified Copies of such Powers of Attorney and certification in respect thereto, granted and executed by the President or any Vice President in conjunction with any Assistant Vice President of the Company, shall be binding on the Company to the same extent as if all signatures therein were manually affixed, even though one or more of any such signatures thereon may be facsimile." (Adopted October 7, 1981 - The Hanover Insurance Company; Adopted April 14, 1982 Massachusetts Bay Insurance Company; Adopted September 7, 2001 - Citizens Insurance Company of America)

GIVEN under my hand and the seals of said Companies, at Worcester, Massachusetts, this 27th day of July    20 06

THE HANOVER INSURANCE COMPANY
MASSACHUSETTS BAY INSURANCE COMPANY
CITIZENS INSURANCE COMPANY OF AMERICA

Charles T Wells, Assistant Vice President

**Certified Copy Void Without Allmerica Financial Watermark**